Good morning, and welcome to the Ninth Circuit. We will hear argument this morning in Hernandez-Hernandez v. Garland. Ms. Madrid, you may proceed. Good morning. May it please the Court, I'm Glenda Aldana of the Northwest Immigrant Rights Project on behalf of Petitioners Yesenia Hernandez and her seven-year-old son, both of whom are asylum seekers from El Salvador. I'd like to reserve three minutes for rebuttal. You may, but just keep track of your time. Yes, Your Honor. The second petition in these consolidated cases provides for the most straightforward way of resolving the issues in this case. So I will be focusing my argument on the BIA's erroneous denial of the family's motion to reopen for ineffective assistance of counsel, but I'm obviously happy to answer any questions about the issues raised in the first petition. The BIA in this case did not dispute or call into question counsel's errors and deficient conduct, but it found that the family had failed to demonstrate prejudice and denied the motion to reopen on that basis. That denial was an abuse of discretion because the conclusion that there was no prejudice was contrary to the law. Cases like Dieringer and Flores-Ortega make clear that where counsel's error causes their client to miss an appeal filing deadline that effectively deprives them of the judicial proceeding altogether, and the agency must then afford the client a presumption of prejudice. That is precisely what happened here. It is undisputed that counsel did not notify the family of the BIA's decision in their case until after the appeal deadline had run. It is thus undisputable that counsel did not let them know about the resolution of their case or the necessary next steps to continue pursuing their case until after it was too late. So the board seems to have thought that even though if counsel didn't tell them that because the board had sent them a copy that they would have been aware of it independently of counsel. That's correct, Your Honor. However, the reason that that courtesy copy did not cure the prejudice that the family suffered as a result of their counsel's deficient conduct is because the record is undisputed that Ms. Hernandez was unaware that the BIA had actually denied her claim until counsel explained it to her. And the reason why that controls here is because this court has recognized in cases like Monjarez-Munoz V.I.N.S. and Iturribarria V.I.N.S. that where a non-citizen is represented, it is reasonable for that non-citizen to rely on their counsel to explain the proceedings to them. And in Iturribarria V.I.N.S. in particular, the non-citizen there had notice from the immigration judge directly in open court that there was a filing deadline for his application for relief, and his attorney missed that deadline and didn't contact the client until after it had run to ask for evidence. And this court specifically said it was reasonable for the client to wait for counsel because one of the reasons that non-citizens retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration law so complicated. And this court in Monjarez-Munoz V.I.N.S. recognized that once a non-citizen retains counsel, it is reasonable for them to give effective control of their case to their retained counsel. Here, it is undisputed that Ms. Hernandez relied on her counsel to explain what was happening in her proceedings and did not know about the fact that the BIA had even decided her case, much less that there was a ticking clock on her appeal, until after the deadline had run, three days after the deadline had run, in fact. And for that reason, the fact that the courtesy copy was mailed to her did not cure that counsel's prejudice, did not cure the prejudice that she suffered as a result of her reasonable reliance on counsel. And, I mean, if she, suppose that she had been aware of what the deadline was and understood something needs to be filed by 30 days, given that she was represented, do you think she could have filed something on her own? Your Honor, I think it's pretty clear from the record here that she lacked the capacity to do so. First, it's undisputed she does not speak English. And she did, when she was pro se initially, secure assistance to help her in completing an asylum application following the immigration judge's instructions in court with Spanish language interpretation as to what she should do. But after that, the immigration judge himself impressed upon her the importance of securing counsel in order to continue with that case. So here, what we have is somebody who was aware of the limitations that she had and was very diligent in securing counsel to navigate what is a very complex process. And counsel failed her, unfortunately, at a critical time. And counsel failed her because counsel, you petition for review in this court. And Deeringer and Flores-Ortega tell us when a non-citizen is prevented from filing a timely appeal because of their counsel's error, they're not only prejudiced, but they're entitled to a presumption of prejudice. In Deeringer, counsel's efficient conduct was failing to file a timely notice of appeal. In Deeringer, in adopting Flores-Ortega in the immigration context also tells us that counsel's failure to consult with a client about their appeal once there's been an adverse decision made in their case also separately entitles the client to a presumption of prejudice because they've been denied counsel at a critical juncture of their representation. And here, that is precisely what happened. Ms. Hernandez was not made aware of the filing deadline or of even the decision in her case until after the deadline had run. And Deeringer does not require more in order to make out but for showing of prejudice. The individual in Deeringer, the evidence that the court looked at was that the petition for review was filed or the appeal was filed late and that it was filed late because of counsel. Ms. Hernandez has demonstrated here that her appeal was filed late because counsel failed to let her know that the BIA had decided her case and that there was a 30-day deadline. Deeringer does not require more, and the BIA ignored the case law, demonstrating not only that the family was prejudiced as a result of their counsel's failure but that the family should have been afforded a presumption of prejudice and its decision was therefore in error and it was an abuse of discretion. And so we believe that the proper course here would be for this court to vacate that erroneous decision and to remand it for the BIA to reissue the decision and allow the family an opportunity to present their claims in a timely petition for review here. I mean, do we, we only need to do that. I mean, we have the merits before us, right? I mean, so do you think we can just go ahead and look at the merits now or what's your view of how we should proceed? Your Honor, I believe that you may look at the merits now that we have fully briefed the merits to you. However, I do believe that in order for you to reach the merits, you would need to rule on the first petition for review, which raises some threshold questions about the existence of equitable tolling. And given that the Supreme Court has granted cert on Riley v. Garland, which is looking at the question of whether the deadline at 1252 B1 is jurisdictional or not, I believe the court would need to to wait for the Supreme Court to rule on Riley. And we don't, we think that we don't, you don't need to wait for that to happen. You may just resolve the case on the motion to reopen if you agree with us that the BIA erred because it did not look at, did not follow Deering or did not follow Flores Ortega or many of the other cases from this court that have made it clear that where counsel's error deprives an individual of their timely appeal, that they are accorded a presumption of prejudice. But we did fully brief those issues, Your Honor. So then, I mean, so on the merits, why we're reviewing for substantial evidence, right? So you need to show that on this record, any reasonable fact finder would be compelled to conclude contrary to what the board did. So you're focusing to start on the question of the social distinction of your proposed particular social groups. What, what is the evidence that would compel a conclusion that those groups are perceived as distinct? Your Honor, the strongest evidence is the existence of a witness protection law in El Salvador, which this court and Enrique Rivas recognized is sort of the best way of demonstrating that to a society, a group is socially distinct because of their vulnerable status. The exact same witness protection law that this court used to demonstrate, or rather used as a, as an adequate manifestation of social distinction is the same witness law that is in place in El Salvador at the time that Ms. Hernandez was there and that recognizes her. The witness law itself is not limited to individuals who testify in open court. The witness law and the court can look at page 110 of the certified administrative record. Specifically, it extends its protections to individuals who provide, who cooperate with the authorities in the investigation of. But, but just because the country has a law that classifies people in a particular way, it doesn't follow that society perceives that classification that that group is distinct, right? I mean, in this country, the internal revenue code says that if you put solar panels on your house, you, you get a particular tax credit. And if you don't, you don't. But I, I don't think it doesn't follow that American society perceives installers of solar panels as a socially distinct group. Your Honor, that is true, except that the nature of the law in El Salvador singles out this group as meriting protection, right? And our asylum laws are about socially are about protection itself. And so what the witness protection law does is it says this particular group of people are a distinct group of people. And it recognizes that they're in a particularly vulnerable place because of the fact that they are providing testimony and they are collaborating with the authorities about the invest, in the investigation of gang activity. And so Enrique, that leads me to a question. Does it have to be providing testimony, just talking to the police? What's the cooperation that's socially distinct? Yes, Your Honor. Um, cooperation by definition requires some sort of affirmative act. It is not passive. And so the facts of this case demonstrate, um, that in El Salvador, any sort of cooperation, um, active cooperation that is speaking to the authorities, reporting to the authorities about gang activity that constitutes, um, the requisite action. It is not mere, it is not passive. It requires an affirmative act that may be observed and is observable, but it doesn't have to go so far as to actually providing testimony. It just, um, made it clear that that was, that the fact of providing testimony in open court was not a limiting fact, a limitation. And the witness law itself is not limited to providing testimony in court. It is about participating in the investigation of criminal conduct. All right. If I may reserve the rest of my time, if there are no questions. Thank you. Mr. Harbin. Good morning. May it please the Court. Brendan Hogan, uh, for the government. Uh, the government agrees, uh, with the Petitioner's Council that it would be best, um, for this court to decide the case on the second review petition because the underlying review petition, it would be best to reserve judgment pending the Supreme Court's decision in Riley. However, if you would like to discuss the first review petition, uh, just a couple of points. Uh, as we point out in our brief, it's unnecessary to address, um, the equitable tolling argument because the motion to reopen is an alternative mechanism and petitioner will not be denied judicial review. The board can either grant the review, uh, the motion to reopen and there'll be a fresh 30 days, or if they deny it, as is the case today, the case will be reviewed. On top of that, it's a mandatory claims processing rule, which we timely asserted in our, uh, motion for summary disposition, and we resorted again in our brief. And then on top of that, Petitioner would have to show equitable tolling applies. And in this case, the, uh, presumption of equitable tolling under common law would not apply for several reasons. Uh, if you look, Congress enacted the current statute under the backdrop of, uh, federal rule of appellate procedure 26B2, which specifically states you cannot extend the time to file a review petition from an agency decision absent, uh, a clear congressional intent. And that's not what happened here in the original, um, uh, statute 1101A5 that initially allowed 90 days to file a review petition. In 1996, Congress amended the statute to say, now you only have 30 days and you must do it. And they didn't include any exceptions. And this signifies that Congress was aware or that Congress intended that they wanted finality, that people would bring their claims as soon as possible. Uh, so based on all of that, the court should not even reach the merits in the underlying petition because all of those legal impediments are in place. With regards to the second review petition, uh, the, the board was correct here. They did not abuse their discretion. This is not a case where the petitioners were misled by counsel. Uh, I would like that there was no agreement that they would file a review petition if the board issued an adverse decision. Uh, counsel did not mislead them that they were promptly, did not promise we'll do it. Like what happened here, unfortunately, is petitioner was given notice and it's, it warned her clearly you have 30 days to file a review petition. Isn't it unreasonable to expect someone who doesn't speak English has, I think, a middle school education to understand the significance of such an, I mean, how are they to, but that goes to the, to, uh, I didn't mean to rush it. It goes to why the board does this in the first place. It did it, uh, in matter of Compion, which was a response to this court's precedent from 20 years ago, encouraging the court or the board to do exactly what they did in this case to issue notices to people because this court was frustrated that, uh, petitioners were missing the filing deadline. And this was like an extra protection to preserve their right to file an appeal. And that is what happens in this case. And even though it was in English at that point, petitioner could have gone to her counsel and asked, I got this thing. What is this? She could have consulted other counsel where she could have filed. Even outside the immigration context, say your sophisticated client, your in-house lawyer, you lose a trial and you have, you know, 30 days to file notice of appeal, whatever the jurisdictional rule is. And if your attorney doesn't do that and, and, and the rebuttal as well, you knew of the trial verdict. I mean, that's, you would think that lawyers performance is deficient, right? I mean, even with a sophisticated client. That is true, but deficiency is not the issue here. Your honor, with your respect, the board implicitly acknowledged that this was deficient conduct, but it goes to prejudice. And the prejudice is whether she was wholly prevented from filing an appeal. And at a minimum, again, this is the reason the board started sending notices to people was to encourage them to do something. She could have consulted with new counsel. She could have contacted legal services organization, or she could, and I'm not saying it's easy, but she could have done what many petitioners do before this court, which is at minimum file a pro se review petition, which is not. Could she file pro se while she's represented? I mean, we, we filed on behalf of people who are represented by council. That's a fair point, your honor, but that goes back to, there was no agreement with the legal services organization to represent her before this court. She says nothing about that. And her affidavit at page 21, the prior legal services organization attorney does not say anything about that in her very extensive affidavit about what happened here. And the independent council that was retained to file the motion to reopen before the board in detailing all of the reasons why the board should reopen did not raise that issue. So in this case, there would be no impediment or no conflict into the petitioners filing a pro se review petition. And for that reason, unfortunately for petitioners, there's just simply no prejudice here. Again, like it's the very reason the notices are sent are to avoid cases just like this. But how, and as a practical matter, she's represented. I mean, and as Judge Lee noted, you would reasonably expect that a competent lawyer would file something by the deadline and not allow the time to run out. And so you don't know that your lawyer is not competent until day 30 arrives and he doesn't file it. So why would you think on day 29 that you should go try to file something yourself? Well, two things, Your Honor. One, that goes to competency, which is the deficient conduct. And there's no argument about that here. It goes more towards prejudice. Did that deficient conduct preclude her under Diringer and accompanying cases from filing a review petition? My point is it practically precluded her from doing it, arguably, because she had no way of knowing that she needed to do it herself until it was too late for her to do it herself. But the cover sheet states like the clock is running, you have 30 days. And in her affidavit, she said, had I known, I would have done something. But she didn't know. She's never denied receiving the notice. It was mailed to the address listed on the administrative appeal notice, which under the regulations is where they send these notices. I guess your argument, if I understand it correctly, is that she should have known she had to do something because her attorney didn't say that the attorney was... She should have noticed that an order has come from an administrative tribunal, which is determining whether she has the right... Why wouldn't a reasonable person, if the attorney was not going to act, I think a reasonable person would expect their attorney to reach out to them and say, hey, you received this notice, I'm not going to file anything else on your behalf. You have to do something. It seems to me that that is what it means to rely on the advice of counsel. But again, she didn't rely on the advice of counsel, Your Honor. Nothing in her affidavit, the affidavit from independent counsel or the prior legal services attorney says anything about what they had discussed about what representation would be if she lost her case. And she was aware that there was an appeal pending with the Board of Immigration Appeals. And at a minimum, if you received the notice from the board, understanding that she doesn't speak English, a reasonable person with a cover sheet saying you have 30 days to preserve your appeal, as the board pointed out, should do something. So if we disagree with you on the rationale that the board gave for denying the motion to reopen, should we grant that petition and remand? You haven't briefed the merits, which I suppose could be an alternative ground for denying the petition. I believe that's our second to the last footnote in our brief, which is if you disagree with our conclusion or our defense of the no prejudice determination, you would have to remand for the board to address that issue. The board would then have to apply the presumption of prejudice and determine whether it would reissue or not. Okay. So you are not suggesting that we... One could imagine someone in your position saying, well, even if you look at the merits, she's not going to prevail. And so you can deny it, you're not making that argument. I think it would be best either for this court to decide the review petition and either deny it or remand for the presumption of prejudice issue. Going back to the notice that the government gave, was that in English only or did it... It was in English only. But it's clearly on letterhead from the board of immigration appeals. If the government knows she doesn't speak English and you send something in English, what are you supposed to do? Even if we're in English, it's probably hard to understand it. True. I'm sorry, will you finish? I mean, as it says the practical matter, I mean, it seems like it was very difficult for her given all the circumstances. The two points, your honor, she was aware she was in removal proceedings and that an emergency appeal from an immigration judge's adverse decision was pending. And now you're receiving a document with board of immigration appeals letterhead and also many, many pro se petitioners file appeals with this court every year. So it stands to reason that she could have filed one on her own, contacted new council, or at a very minimum approach to legal services organization and inquired, like, what is this? Does the panel have any other questions? Thank you, Mr. Hogan. Ms. Aldana? A couple of points, your honor. First, the notice from the BIA is not a clear notice saying you have 30 days to do something about this notice. At page 77 of the certified administrative record, what the notice says is this is a courtesy copy. Your attorney is receiving a copy. So a represented noncitizen knows my attorney is already aware of this. I will wait for my attorney to let me know. And then it says if the attached decision orders that you be removed from the United States or affirms an IJ's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of this decision. This isn't language that's straightforward, especially not for somebody who does not speak English, as is undisputed in this case. It's language that requires explaining. In this court, an Evagian Beholder found when dealing with a BIA decision that was two sentences long, that that defied the abilities of a layperson to understand that a final order had been removed. So it is not as if the board sent a clear notice that Ms. Hernandez should have understood immediately. Second, in the Iturribária V.I.N.S., which I've mentioned before, the individual actually received in person, translated, interpreted notification of a filing deadline. And this court did not find that that absolved their counsel of their obligations to represent the client. And it did not mean that the client could not reasonably rely on their counsel to actually follow up in a timely manner. Third, while we recognize that the government has not briefed the merits issues in this case, petitioners did brief the merits in this case and the commissioner's order at Docket 17 did, we believe, make it clear that the government was required to file an answering brief that responded to petitioners' arguments. And so we would posit that in not responding to them at all, the government has forwarded those arguments. And we do believe that this court may reach those arguments because they have been fully briefed. And finally, with regard to equitable tolling in this case, Your Honors, the government has it wrong. The way that we analyze the question before the court is not whether Congress has decided to allow for equitable tolling, but rather the inquiry has to be Congress legislates statutory deadlines against a backdrop, an age-old principle, the Supreme Court called it, that equitable tolling is presumptively available for statutory deadlines. And so the question before the court is not, is equitable tolling allowed here? It's has Congress indicated that the presumption that it is allowed been rebutted? And the reason why Federal Rule of Appellate Procedure 26B2 does not compel a finding that Congress rebutted it is for three primary reasons. The first is because the inquiry is what is Congress's intent. Did Congress intend to prevent the equitable tolling presumption to apply? The Federal Rules of Appellate Procedure were not passed by Congress. They were court-made rules. Second, it would be inconsistent with the methodology the Supreme Court has told us we must use, the courts must use, in assessing whether the presumption has been rebutted, which requires looking at the specific statutory scheme at issue. And here that does not, that is inconsistent with looking at a blanket rule from the Federal Rules of Appellate Procedure. And finally, the Supreme Court and this court have left open the question, in some cases, about the availability of equitable tolling when dealing with deadlines for petitions for review of agency decisions. And I just point out the Harold V. Department of Defense case from May and Alonzo Juarez from the circuit. Can I ask you one question about your client's declaration? So it says, if I had been informed of the petition for review deadline, I would have timely pursued such a petition. It doesn't quite, well, it does not say, I thought counsel, you know, counsel told me you'd file a petition, or I thought counsel was going to file a petition. Um, are you asking us essentially to infer that from the context? Because it's not, it's not quite in there. Your Honor, you're right. It's not in there because the last time she'd spoken to her counsel, she wasn't at that stage of the proceedings yet. She was at the BIA appeal stage and it is undisputed that she had a retainer for that, right? And counsel's inefficient conduct did not even allow her to have a conversation with counsel about a retainer for the next step, which would have been a timely petition for review. Counsel contacted her too late to have that conversation. So she could only sign a retainer for an untimely petition for review. And the case law Flores Ortega makes clear that counsel, in addition to having a baseline obligation of letting your client know in a timely manner that the BIA has decided her case, counsel also has an obligation to consult with her about an appeal. And the rules of the ABA bars, they note that in order for counsel to be diligent, counsel must consult with a client about an appeal before relinquishing responsibility over a matter, even if there have been no conversations or discussions about appeals. Did you say the Tennessee bar? Yes, Your Honor. The Tennessee bar is, um, counsel in this case was barred in Tennessee. And so professional rules, yes, but also the Washington rules, um, also, you know, the Washington rules, he or she, the client is in Washington. The Washington rules also adopt that comment from the ABA model rules. Thank you so much. Thank both counsel for the arguments. The case is submitted and we're adjourned.
judges: MILLER, LEE, THOMAS